UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GARRETT TETIL, et al.

      Plaintiffs,                                    Case No. 18-cv-10808

v.                                            Honorable Thomas L. Ludington
                                                      Magistrate Judge Patricia T. Morris
JUNIATA TOWNSHIP
PLANNING COMMISSION, et al.

      Defendants.
and

PEGASUS WIND, LLC

      Intervenor Defendant.
_____/

## ORDER GRANTING MOTION TO DISMISS, DENYING LEAVE TO AMEND, AND DISMISSING COMPLAINT

On March 12, 2018, Plaintiff Garret Tetil filed a complaint against Defendants Juniata Township (the "Township"), Juniata Township Planning Commission (the "Planning Commission"), and Juniata Township Zoning Board of Appeals (the "ZBA") (collectively, "Defendants") challenging the Planning Commission's decision to grant a special land use permit (SLUP) to the Pegasus Wind Project. ECF No. 1. On April 9, 2018, Plaintiff Garrett Tetil filed an amended complaint as of right, but also adding Plaintiffs Laura Richmond, Ryan and Amanda Wenzlick, and Jerry and Rachelle TerBush. ECF No. 5. On May 14, 2018, a stipulated order was entered allowing Pegasus Wind, LLC (Pegasus) to intervene. ECF No. 11. On May 29, 2018, Plaintiffs filed a motion to amend their complaint to add a claim of appeal of the Juniata Township Zoning Board of Appeals' decision. ECF No. 15. On June 12, 2018, Pegasus filed a

motion to dismiss the amended complaint. ECF No. 17. Pegasus Wind opposes the motion to amend on futility grounds.[1]

The proposed second amended complaint (hereinafter the "complaint") contains five counts for relief. Count I is a claim of appeal of the Planning Commission's decision to grant Pegasus Wind's SLUP application, a decision which Plaintiffs contend was procedurally improper for several reasons. Compl. ECF No. 15-1. Proposed Count II is a claim of appeal of the ZBA's decision to reject Mr. Tetil's appeal based on lack of jurisdiction. Count III alleges various violations of the Michigan Open Meetings Act. Counts IV and V allege violations of procedural and substantive due process.

## I.

When addressing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court is to accept all of Plaintiffs' factual allegations as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). Accordingly, the relevant facts are derived from Plaintiffs' complaint. Plaintiffs are citizens and residents of Juniata Township, Tuscola County, Michigan. Compl. ¶ 1-4. Pegasus Wind, LLC is a wholly owned subsidiary of NextEra Energy Resources, LLC, who constructs and operates numerous wind energy systems throughout the United States. *Id.* ¶ 10. The Juniata Township Commercial Wind Energy System Ordinance ("Wind Ordinance") governs the approval of SLUP applications for wind energy projects, and sets restrictions on height, noise level, vibrations, and "shadow flicker." *Id.* ¶ 12. Pursuant to the Michigan Zone Enabling Act and the Juniata Township Zoning Ordinance ("Zoning Ordinance"), the Planning Commission was required to conduct a public hearing on the proposed Pegasus Wind Project *Id.* ¶ 15. Notice of the hearing must be published in a newspaper and provided by first class mail not

---

[1] Plaintiffs indicate that the proposed second amended complaint is identical to the first amended complaint with the exception of the addition of a new count II. Accordingly, the analysis of the proposed second amended complaint will be equally applicable to the first amended complaint, which is subject to a motion to dismiss.

less than 15 days prior to the hearing to all owners and occupants of property within 300 feet of the boundary of the project. *Id.* ¶ 16. Section 606(2) of the Zoning Ordinance requires that the notice describe the nature of the SLUP application and indicate the property which is the subject of the SLUP application. *Id.* ¶ 17. The notice must also inform the property owners and occupants within 300 feet of the project boundary of their right to demand a public hearing on the request. *Id.* ¶ 17.

The Planning Commission initially decided to hold a "Special Session and Public Hearing" on the SLUP on November 20, 2017, and published notice thereof identifying 31 parcels subject to the SLUP request. *Id.* ¶ 18. The notice listed the parcels by tax identification numbers. *Id.* The notice did not advise owners or occupants within 300 feet of those parcels of their right to demand a public hearing. *Id.* The notice stated that the Planning Commission could take action on the proposed SLUP "at the special session following the hearing." *Id.* The notice failed to inform the public or those receiving it how or where they could review the proposed SLUP application. *Id.* ¶ 19.

Mr. Tetil objected to the defective notice by letter on November 14, 2017, including the fact that the Planning Commission intended to vote on the SLUP application without having it reviewed by an engineer, acoustician, or other appropriate professional. *Id.* ¶ 20. The Planning Commission rescheduled the November hearing for December 9, 2017.[2] *Id.* ¶ 21. The notice was published on November 20, but "was not received by many landowners" until November 30. Although the SLUP application stated that there were 153 "participating parcels," the notice only identified 31 parcels. *Id.* ¶ 23. Mr. Tetil objected to the defective notice by letter dated December 6, 2017, requesting that the hearing be rescheduled. *Id.* ¶ 24. The hearing was not rescheduled

---

[2] The complaint is not consistent as to whether the meeting took place on December 6 or December 9.

and was held as planned on December 9, 2017 at 9:00a.m. in a tent outside township hall. *Id.* ¶ 24-25. The planning commission was asked to reschedule the hearing due to inclement weather. *Id.* ¶ 25. Propane heaters had been placed within the tent and fire department personnel ordered that the meeting be shut down or the heaters be removed. *Id.* At one point, the members of the Planning Commission "huddled together with the township attorney to discuss and deliberate certain matters." *Id.* The contents of these deliberations were not recorded. *Id.* The Planning Commission did not vote to go into a closed session prior to the off-the record conversation. *Id.* The Planning Commission then chose to halt the meeting and resume it on a different day at a different location. *Id.*

The Planning Commission issued another public hearing notice on or about December 14, 2017 rescheduling the hearing for January 3, 2018. *Id.* ¶ 27. The notice "did not describe the project" nor did it "identify the addresses for the parcels involved in the project." *Id.* ¶ 29. Mr. Tetil sent another letter to the Township on or about December 27, 2018 objecting to the notice and asking that the hearing be rescheduled following proper notice. *Id.* ¶ 29. The Township held a "special meeting" on January 3 "which was continued to January 4." *Id.* ¶ 30. At the special meeting, Mr. Tetil attempted to create an audio and video recording of the meeting but was required to keep his microphone and video cameras in a specific corner located in the back of the room, making it impossible to obtain a video recording of the entire meeting. *Id.* Because his microphone was not allowed to be closer than 10 feet from the members of the Planning Commission, it was not possible to obtain an intelligible audio recording of the hearing. *Id.* ¶ 31.

The special meeting was adjourned and continued on January 13. *Id.* ¶ 32. At the meeting held over the course of January 3, 4, and 13, the Planning Commission refused to allow public comment and refused to allow members of the public to be heard or to speak regarding the

SLUP. *Id.* ¶ 32. The Planning Commission voted to approve the SLUP on January 13 notwithstanding that the project violated the Wind Ordinance in several respects. *Id.* ¶ 33-34. On Feb. 2, 2018, Mr. Tetil appealed the Planning Commission's decision to the ZBA. *Id.* ¶ 33. At the hearing on Mr. Tetil's appeal, Mr. Sondquist, Chairman of the Planning Commission, also presided as a member of the ZBA. *Id.* ¶ 37. It was pointed out to him the that members of the Planning Commission are prohibited from acting as members of the ZBA with respect to matters they had previously voted upon as a member of the Planning Commission. *Id.* ¶ 39. Mr. Sondquist declined to disqualify himself, insisting that he could participate in the initial consideration of the ZBA's jurisdiction to hear Mr. Tetil's appeal. *Id.* ¶ 40.

During the debate over the ZBA's jurisdiction "it was clear that the members of the ZBA were familiar with and had previously discussed an opinion from the Township attorney regarding the ZBA's jurisdiction." *Id.* ¶ 41. This "previous discussion" did not take place in an open meeting nor did the ZBA go into closed session to discuss this opinion. *Id.* ¶ 42. The ZBA unanimously voted that it did not have jurisdiction to hear Mr. Tetil's appeal. *Id.* ¶ 43. "Because there was no map or other information published as to the location of the proposed turbines, other than tax parcel numbers, Ms. Richmond and the Wenzlicks were unaware of their proximity to any proposed turbines." *Id.* ¶ 44. The Terbushes "live within 300 feet of the boundary of a parcel on which a commercial wind turbine is proposed and which is part of the SLUP application.

The notices sent to the Terbushes did not contain any information as to the proposed locations of the wind turbines, nor did the notices inform them that they were within "300 feet of property on which a proposed turbine is to be constructed." *Id.* ¶ 44. Neither Ms. Richmond, the Wenzlicks, nor the TerBushes attended any of the hearings or special meetings on the SLUP

application. *Id.* ¶ 45. Had they been aware of the actual proposed locations of the turbines, they would have attended and opposed the SLUP application.

## II.

A pleading fails to state a claim under Rule 12(b)(6) if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678-79 (quotations and citation omitted).

## A.

Defendants argue[3] that Count I (Mr. Tetil's claims of appeal of the Planning Commission decision[4]) should be dismissed for lack of standing and based on *Colorado River* abstention. Defendants argue that Mr. Tetil is not an "aggrieved" party under M.C.L. § 125.3606(1) because he has suffered no substantial damages that are uncommon to similarly situated members of the community. Mot. at 7–8 (citing *Joseph v. Grand Blanc*, 147 N.W.2d 458, 460 (Mich. Ct. App.

---

[3] Intervenor Pegasus Wind filed the motion to dismiss, and the remaining Defendants filed notices of joinder/concurrence in that motion.
[4] Mr. Tetil is the only plaintiff asserting claims of appeal.

1967)). Defendants argue that granting leave to amend to add Count II (Mr. Tetil's claim of appeal of the ZBA decision) would be futile for the same reasons.[5]

Plaintiff Tetil contends that the "aggrieved" party standard of M.C.L. § 125.3606(1) only applies to judicial review of a decision of the zoning board of appeals, and that his claim of appeal from the Planning Commission is governed by the three-element standing inquiry set forth in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).[6] Resp. at 9-12. Plaintiff Tetil also contends that, irrespective of which standard governs the inquiry, he has standing to assert his claim of appeal.

M.C.L. § 125.3606(1) authorizes an "aggrieved" party to seek judicial review of a decision of the ZBA. M.C.L. § 125.3604(1) allows an "aggrieved" person to seek review by the ZBA of a decision of the Planning Commission. An "aggrieved" person has been interpreted to mean someone who has sustained damages that are uncommon to similarly situated members of the community. *Joseph v. Grand Blanc*, 147 N.W.2d 458, 460 (Mich. Ct. App. 1967)). The aggrieved party standard applies to individuals seeking ZBA review of Planning Commission decisions, and to individuals seeking judicial review of ZBA decisions. Thus, it would not be sensible if direct judicial review of Planning Commission decisions required a lower injury

---

[5] Federal Rule of Civil Procedure 15(a)(2) provides that a party may amend its pleading with the court's leave and that "the court should freely give leave when justice so requires." Denial of a motion to amend is appropriate, however, "'where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). An amendment would be futile if the amended complaint does not state a claim upon which relief can be granted. *Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005).

[6] These elements are: first, Plaintiff must have suffered an injury in fact – an "invasion of a legally protected interest" which is "concrete and particularized" and not "conjectural or hypothetical." *Id.* at 561. Second, the injury must be fairly traceable to the conduct complained of. *Id.* Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.*

threshold than the "aggrieved party" standard.[7] Neither party has identified any pertinent authority one way or the other.

In any event, it is apparent that Mr. Tetil's allegations are insufficient to support standing under either standard because he has alleged nothing other than a violation of the zoning ordinance. In his response brief, he argues that he has standing because he:

> has alleged that, as a neighboring property owner who will live within close proximity to a proposed wind turbine, he will suffer specific injury to his own property rights if the turbines are installed as permitted under the SLUP, due to excessive height of the turbines, noise, shadow flicker, vibrations, and potential interference with residential electronic reception.

Resp. at 11-12, ECF No. 24. (citing First Am. Comp, ¶¶33(a) – (f), ECF No. 5, Pg ID 25-26)).  A response brief, however, is not a pleading and is not the vehicle by which to assert factual allegations. *See* Fed. R. Civ. P. 7(a). Although he cites to paragraph 33 of the complaint, neither paragraph 33 nor any other part of the complaint contains the allegations in his response brief. Paragraph 33 reads as follows:

> 33. The Planning Commission voted to approve the Pegasus Wind SLUP notwithstanding that the evidence from the record of the hearings before the Planning Commission clearly shows that the Pegasus Wind Project fails to meet the standards of the Wind Ordinance in the following significant respects:
>
> a) Wind Ordinance Section 2.6 provides that the Planning Commission may approve an increased height for a commercial wind energy tower, not to exceed 500 feet, if all of the conditions set forth in 2.6(a) – (c) are met. These conditions require a showing that the increased height will result in preserving a substantial stand of trees, existing land forms or other structures that would otherwise need to be removed to increase wind velocity; that the increased height is the minimum necessary to achieve a reasonable rate of return on the operation of the wind turbine; and that the increased height will not result in increased intensity of lighting on the tower. The Planning Commission improperly granted an increased maximum height allowance for all of the turbines and parcels involved in the Pegasus Wind System, but failed to find that any of the

---

[7] The parties appear to assume, without explanation, that article III standing under *Lujan* would impose a less rigorous standing requirement than the "aggrieved" party standard of the Zone Enabling Act.

specific conditions set forth in Wind Ordinance Section 2.6a-c have been met for any of the proposed turbine sites.

b) Wind Ordinance Section 2.19 governs shadow flicker, and states that a commercial wind energy system shall be designed such that "shadow flicker will not fall on, or in, any existing dwelling." Wind Ordinance Section 2.19(d). Nonetheless, the Planning Commission erroneously interpreted the provisions of Section 2.19(d) to provide that shadow flicker of 30 hours per year or less is acceptable on or in an existing dwelling, contrary to the plain language of the Wind Ordinance.

c) Wind Ordinance Section 2.8 sets forth maximum noise level requirements for a proposed commercial wind system. The evidence in the record demonstrates that the Pegasus Wind Project fails to satisfy the maximum noise level requirements of Wind Ordinance Section 2.8.

d) The Planning Commission further determined that the Pegasus Wind Project SLUP application meets all of the setback requirements of Wind Ordinance Section 2.5 without any evidence that those requirements are met in the record of the application for the public hearings;

e) There is no evidence in the record to show that the SLUP application meets the maximum vibration standard set forth in Wind Ordinance Section 2.9;

f) There is no evidence in the record to show that the Pegasus Wind Project SLUP application meets the non-interference with residential reception requirements of Wind Ordinance Section 2.11.

Paragraph 33 simply outlines the manner in which Plaintiffs believe that the Pegasus Wind Project is deficient under the Wind Ordinance, such as its non-compliance with height, noise, shadow flicker, and vibration restrictions. It does not allege Mr. Tetil or any other landowner has experienced or will experience any injury or inconvenience as a result of these alleged zoning ordinance violations, nor does it allege anything about Mr. Tetil specifically.

Moreover no such injury is alleged under Count I or Count II, which simply set forth the statutory basis for the claims of appeal, and allege that "the decision of the Planning Commission is contrary to law and is not supported by material, competent or substantial evidence in the record, and is therefore unlawful, and should be reversed." First Am. Compl. ¶ 52. It is well established that citizens cannot bring suit simply to vindicate the public's non-concrete interest

in the proper administration of the laws. *Lujan*, 504 U.S. at 581 (Kennedy, J., concurring in part and concurring in the judgment).

Paragraphs 74 and 97 are the closest Plaintiffs' complaint comes to alleging that Mr. Tetil was injured in some concrete, individualized way, though it still falls short: "Plaintiffs . . . have property interests which will be affected by the Pegasus Wind Project and which are constitutionally protected . . . the actions of the Planning Commission and the ZBA deprive Plaintiffs of their recognized and vested property rights." First Am. Compl. ¶¶ 74, 97. However, article III standing requires injury that is *concrete* and *particularized*. *Lujan*, 504 U.S. 555. The allegations that Mr. Tetil is being "deprived" of his property rights and that his property rights will be "affected" are far too generalized and conclusory to satisfy injury-in-fact requirement of article III standing.

Accordingly, Count I of the first amended complaint (Mr. Tetil's claim of appeal of the Planning Commission's decision) will be dismissed for lack of standing. The request for leave to amend to add Count II (Mr. Tetil's claim of appeal of the ZBA's decision) will be denied on the same grounds because the proposed amendment would be futile.

**B.**

Count II of the first amended complaint (count III of the proposed second amended complaint) alleges various violations of the Michigan Open Meetings Act (OMA), MCL §15.262(a). ECF No. 5 at 13. Count II alleges 1) that the published notice and individual notices were deficient in several respects; 2) that the December 9, 2017 hearing was not held in a place generally accessible to the public; 3) that during the course of the December 9, 2017, hearing the members of the Planning Commission huddled together and conducted an off the record deliberation; 4) that the members of the Planning Commission refused to permit public comment

at the January 3, 4, and 13 special meeting; 5) that the Planning Commission refused to reasonably allow Mr. Tetil to tape record or videotape some or all of the proceedings of the January 3, 4, and 13 meetings; and 6) that the ZBA discussed or deliberated the Township attorney's opinion regarding ZBA jurisdiction outside of the context of an open meeting. The parties disagree as to whether the allegations in the complaint, accepted as true, demonstrate an OMA violation.

### i)

If a public body fails to comply with the OMA, in addition to authorizing enforcement actions by the attorney general or local prosecutor, the statute allows any person to commence a civil action. *Speicher v. Columbia Twp. Bd. of Trustees*, 497 Mich. 125, 135, 860 N.W.2d 51, 56 (2014) (citing MCL 15.270–73).

The OMA creates a three-tiered enforcement scheme for private litigants:

(1) Section 10 of the OMA allows a person to file a civil suit "to challenge the validity of a decision of a public body made in violation of this act." Subsection 2 specifies when a decision may be invalidated, and Subsection (5) allows a public body to cure the alleged defect by reenacting a disputed decision in conformity with the OMA. Notably, § 10 does not provide for an award of attorney fees or costs.

(2) If a public body is not complying with the OMA, § 11 allows a person to file a civil suit "to compel compliance or to enjoin further noncompliance with this act." Subsection (4) provides for an award of court costs and actual attorney fees when three conditions are met: (a) a public body is not complying with the act; (b) a person files "a civil action against the public body for injunctive relief to compel compliance or enjoin further noncompliance with the act"; and (c) the person "succeeds in obtaining relief in the action [.]"

(3) Finally, § 13 provides that a public official who intentionally violates the OMA is "personally liable in a civil action for actual or exemplary damages of not more than $500.00 total, plus court costs and actual attorney fees...."

*Id.* "Where a statute gives new rights and prescribes new remedies, such remedies must be strictly pursued; and a party seeking a remedy under the act is confined to the remedy conferred

thereby and to that only." *City of S. Haven v. Van Buren Cty. Bd. of Comm'rs*, 478 Mich. 518, 529, 734 N.W.2d 533, 539 (2007).

**ii)**

With respect to any alleged OMA violations arising out of the December 9, 2018 meeting, including the improper notice thereof, the inadequacy of the venue chosen, or Commission members' off-the-record side-bar conversation, Plaintiffs do not seek any of the relief provided for by the OMA. In fact, the complaint does not appear to seek any relief at all with respect to those alleged violations. Plaintiffs seek the following relief: a) grant Mr. Tetil's appeal of the Planning Commission's decision approving the SLUP application and reverse that decision; b.1) invalidate the January 13, 2018 Planning Commission decision approving the SLUP application, b.2) invalidate the March 7, 2018 decision of the ZBA dismissing his appeal of the Planning Commissions decisions granting the SLUP application; c) declare the actions of the Planning Commission (granting the SLUP application) void; d) declare the December 14, 2017 notice of the January 3, 2018 hearing (at which the SLUP application was granted) invalid; e) declare that the Planning Commission's approval of the SLUP application was an invalid exercise of Township police power; f) enter an injunction directing the Township to deny the SLUP application; g) such other relief as Plaintiffs may be entitled. In short, Plaintiffs have stated in seven different ways that they want to invalidate the decision of the Planning Commission approving Pegasus's SLUP application.

However, the SLUP application was not approved at the December 9 meeting. In fact, the Planning Commission took no action at the December 9, 2018 meeting. Plaintiffs do not allege that the January meetings were a continuation of the December 9 meeting. Thus, there is no decision to invalidate arising out of the December 9 meeting. Nor is there a request to enjoin any

of the violations arising out of that meeting, the improper notice thereof, or the inadequacy of the venue. Moreover, Plaintiffs do not seek any damages in conjunction with those alleged violations. To the extent the complaint can reasonably be read to ask the Court to simply declare that Defendants committed those violations, the OMA does not provide for purely declaratory relief. *Citizens For A Better Algonac Cmty. Sch. v. Algonac Cmty. Sch.*, 317 Mich. App. 171, 184, 894 N.W.2d 645, 651 (2016), *appeal denied,* 500 Mich. 1009, 896 N.W.2d 1 (2017). Accordingly, the allegations relating to the December 9, 2018 meeting will not be addressed further.

### iii)

With respect to the meeting held over the course of January 3, 4, and 13 (at which the SLUP application was approved), Plaintiffs allege 1) that the notice of that meeting was deficient; 2) that the Planning Commission refused to permit public comment; 3) that the Planning Commission refused to reasonably allow Mr. Tetil to tape record or videotape some or all of the proceedings. Plaintiffs also allege that the members of the ZBA previously discussed an opinion of the township attorney regarding the ZBA's jurisdiction. Compl. ¶ 42.

### a)

Plaintiffs allege that the notice of the January meetings was "defective" in the following respects: 1) the notice failed to sufficiently indicate the property that was subject to the SLUP request; 2) the notice did not describe the project for which a SLUP was requested but simply stated "Pegasus Wind Project;" 3) the notice did not adequately or reasonably notify members of the public which parcels may be involved, but merely recited parcel numbers; 4) the individualized notices to persons within 300 feet of the parcels subject to the SLUP application did not inform them that a proposed wind turbine would be in proximity to their houses.

- 13 -

As Defendants emphasize, however, the OMA (MCL 15.264) only requires notices of public meetings to contain "the name of the pubic body to which the notice applies, its telephone number if one exists, and its address." Plaintiffs do not allege that the notice omitted any of this information. Rather, Plaintiffs allege that Defendants violated the notice requirements of the *Zone Enabling Act* (ZEA), which requires 15 days advanced public notice, as well individualized notice to property owners within 300 feet of the proposed development.

Plaintiffs contend that the OMA's requirements "are modified by the ZEA, which cross-references the OMA." In support of this assertion, Plaintiffs cite to ZEA section 701, MCL 125.3701, which provides that "all meetings subject to this act shall be conducted in compliance with the open meetings act . . ." Plaintiffs therefore conclude that a violation of the ZEA is actionable under the OMA. This conclusion does not follow logically. The ZEA provides that all meetings subject to the ZEA must also comply with the OMA. The inverse however, is not true. The OMA does not provide that all meetings subject to the OMA must also comply with the ZEA. Plaintiffs furnish no authority in support of the proposition that ZEA violations are actionable under the OMA, nor does any such authority appear to exist. Therefore, the allegations concerning the propriety of the notice fail to state a claim under the OMA.

**b)**

M.C.L. § 15.263(5) provides that "a person shall be permitted to address a meeting of a public body under rules established and recorded by the public body."

The complaint alleges that "[a]t the special meeting *held over the course of January 3, 4 and 13, 2018*, the Planning Commission refused to allow public comment, and refused to allow members of the public to be heard or to speak regarding the Pegasus Wind Project SLUP. Compl. ¶ 32 (emphasis added). In their motion to dismiss, Defendants attach the unapproved

meeting minutes from the special meeting, which were attached to Plaintiff's state court complaint. The minutes reflect that on January 3 "the Chair offered citizens of Juniata Township the opportunity to make public comment. 14 Juniata citizens voiced comments. The Chair offered the public at large the opportunity to provide public comment. 3 individuals spoke." ECF No. 17-1 at PGID 201. Thus, the allegation in Plaintiffs' complaint (that the commission refused to allow public comment) is inaccurate. Defendants also indicated that Mr. Tetil was one of the individuals who spoke at the meeting, which Plaintiffs do not appear to dispute.

In their response brief, Plaintiffs now argue that: "Plaintiffs allege that while public comment was permitted at the public hearings held January 3 & 4, once the "Special Meeting" began on January 13, further public comment was prohibited." Resp. at 20, ECF No. 24 (citing First Am. Cplt. ¶¶ 32, Dkt. # 5, PGID 25). But that is not accurate. The complaint alleges "*at the special meeting held over the course of January 3, 4 and 13, 2018*, the Planning Commission refused to allow public comment . . ." (emphasis added). The complaint does not allege that there were multiple meetings that took place over different days. Rather, it alleges that there was one "special meeting" concerning the same subject matter (the SLUP application) which took place over the course of three days. Public comment was permitted on the first of the three days.

In their response brief, Plaintiffs contend for the first time that public comment was wrongfully denied on the third day, January 13. However, they offer no support for the notion that the OMA requires public comment to be permitted on each day, or on the final day, of a three-day meeting. Indeed, state appellate precedent tends to undermine this contention. *See, e.g. Treul v. Otsego Cty. Zoning Bd. of Appeals*, No. 231686, 2002 WL 31082159, at *2 (Mich. Ct. App. Sept. 17, 2002) (". . . the ordinance could have imposed reasonable limits on the amount of

public commentary or restricted public commentary to certain times within meetings). Thus, the allegations concerning public comment fail to state a claim under the OMA.

### c)

The complaint alleges that "[t]he Planning Commission refused to reasonably allow Plaintiff Garrett Tetil to tape record or videotape some or all of the proceedings of the January 3, 4 and 13 public hearing/special meeting, in violation of the Open Meetings Act." Compl. ¶ 62. Pursuant to MCL 15.263(1), "[t]he right of a person to attend a meeting of a public body includes the right to tape-record, to videotape, to broadcast live on radio, and to telecast live on television the proceedings of a public body at a public meeting. The exercise of this right shall not be dependent upon the prior approval of the public body. *However, a public body may establish reasonable rules and regulations in order to minimize the possibility of disrupting the meeting.*" (emphasis added).

Specifically, Plaintiffs allege that "Mr. Tetil was required to keep his microphone and video cameras in a specific corner located in the back of the room. From the location in which his video camera was restricted, it was not possible to obtain a video recording of the entire meeting." *Id*. ¶ 30. Oddly, the very next paragraph alleges as follows: "[s]imilarly, because the audio recording microphone *was not permitted to be closer than 10 feet from the members* of the Planning Commission, it was not possible to obtain an intelligible audio recording of the public hearing, either." *Id*. ¶ 30, 31. Plaintiffs first allege that the microphone had to be kept in a specific corner in the back of the room. Then they state that it could be no closer than 10 feet from the members of the planning commission. These statements are inconsistent, unless the room was so small that the distance between the planning commission members and the back of the room was only 10 feet.

Based on these allegations, it is unclear what restrictions the Commission actually imposed on attendees' right to use recording equipment. Moreover, Plaintiffs make no attempt to explain how the restrictions imposed by the commission (whatever they were) were unreasonable. Accordingly, the allegations concerning the restrictions on recording fail to state a claim under the OMA.

**d)**

Finally, Plaintiffs allege that, during Mr. Tetil's March 7 appeal hearing before the ZBA, "it was clear that the members of the ZBA were familiar with and had previously discussed an opinion of the township attorney regarding the ZBA's jurisdiction. This previous discussion did not take place in an open meeting of the ZBA, nor did the ZBA go into closed session to discuss this opinion, as provided by the Michigan Open Meetings Act, indicating that yet another unlawful closed session had occurred." Compl. ¶ 42.

This paragraph does not allege sufficient factual information, accepted as true, to state a claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs contend that Defendants are attempting to hold them to an unreasonably high pleading standard. It is likely true that, at the pleading stage, Mr. Tetil does not yet know when and where this impermissible closed session took place, who the participants were, or what was said. However, it is far from unreasonable to require Mr. Tetil to provide some modicum of factual information regarding what occurred at the hearing and what statements were made that suggested a closed session had previously taken place. Simply alleging that it "was clear" to him that a closed session took place falls short of his pleading burden and fails to apprise the Defendants of the basis for his allegation against them.

For these reasons, and the reasons set forth above, Plaintiffs have not stated a claim under the Open Meetings Act. Accordingly, count III will be dismissed.

## C.

Counts IV and V allege that Defendants violated Plaintiffs' procedural and substantive due process rights. Due process challenges based on property rights require the plaintiff to show the invasion of a constitutionally protected property interest to which the plaintiff has legitimate claim of entitlement, rather than a unilateral expectation. *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008). Plaintiffs have not alleged sufficient facts to establish that they have a constitutionally protected property interest burdened by the Defendants' actions in this case. The complaint alleges that "Plaintiffs, as residents of Juniata Township who will be affected by the Pegasus Wind Project if it is developed, have property interests which will be affected by the Pegasus Wind Project and which are constitutionally protected. Compl. ¶ 79. This allegation falls well short of Plaintiffs' pleading burden as it provides no information about the property rights they are referring to nor does it explain how those rights have been affected or will be affected by the Defendants' actions.

The complaint offers a recitation of the Wind Ordinance provisions governing noise, height, vibrations, and shadow flicker, and alleges either that the Pegasus Wind Project violates those provisions or that the commission misinterpreted those provisions. *Id.* ¶ 33. The complaint does not, however, explain what impact these alleged violations or misinterpretations have or will have on their property rights.

For example, the complaint sets forth the requirements of Wind Ordinance Section 2.19 which provides that a commercial wind energy system shall be designed such that "shadow flicker will not fall on or in, any existing dwelling." *Id.* ¶ 33(b). The complaint then alleges that

"the Planning Commission erroneously interpreted the provisions of section 2.19(d) to provide that shadow flicker of 30 hours per year or less is acceptable on or in an existing dwelling." *Id.* The complaint does not, however, allege that shadow flicker actually does fall or will fall on an existing dwelling of *any* township resident, much less a dwelling belonging to any of the Plaintiffs.

The complaint further alleges that "the evidence in the record demonstrates that the Pegasus Wind Project fails to satisfy the maximum noise level requirements of Wind Ordinance Section 2.8." *Id.* ¶ 33(c). Indeed, noisy wind turbines could potentially be bothersome to some landowners and perhaps interfere with their use and enjoyment of their property. Even assuming such interference would amount to a due process violation (which is not at all clear), it is not clear whether Plaintiffs' properties are affected or will be affected by wind turbine noise.

With respect to Mr. Tetil, the complaint alleges nothing more than the fact that he is a township resident and lists the address of his residence. With respect to Ms. Richmond and the Wenzlicks, the complaint alleges that "because there was no map or other information published as to the location of the proposed turbines, other than tax parcel numbers, Ms. Richmond and the Wenzlicks were unaware of their proximity to any proposed turbines." *Id.* ¶ 44. Presumably they remain unaware of their proximity to the proposed turbines because the complaint offers no such information.

The closest the complaint comes to alleging a burden imposed on any of the Plaintiffs' property rights is at paragraph 44, which states that: "the Terbushes live within 300 feet of the boundary of a parcel on which a commercial wind turbine is proposed and which is part of the SLUP application." ¶ 44. This allegation, however, still fails to establish the invasion of any constitutionally protected property interest. The only apparent significance of the location within

300 feet of the boundary is that the Terbushes are entitled to certain additional notice under the Zone Enabling Act, which they allegedly did not receive. The violation of the notice requirements alone does not establish Plaintiffs' due process claim. *Pamela B. Johnson Tr. ex rel. Johnson v. Anderson*, No. 315397, 2014 WL 4087967, at *10 (Mich. Ct. App. Aug. 19, 2014) ("As the above-cited provisions make clear, the procedural rules regarding notice and hearings did not give rise to a constitutionally protected property interest."); *Orozco v. City of Monroe*, No. 08-13810, 2009 WL 4730442, at *2–3 (E.D. Mich. Dec. 9, 2009) (citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) ("Whether the City violated state notice requirements is not dispositive, however, to the question of whether *constitutionally* inadequate notice was provided); *Bronco's Entm't, Ltd. v. Charter Twp. of Van Buren*, 421 F.3d 440, 453 (6th Cir. 2005) ("'[a] violation of state law . . . is not a denial of due process.'"). The fact that state and local law sets forth certain procedural requirements for public bodies does not give citizens a property interest in seeing that these laws are complied with.

In sum, Plaintiffs focus almost exclusively on Defendants' alleged failure to comply with the governing law. This is accompanied by nothing more than a statement that Plaintiffs are township residents and a barebones assertion that they "have property interests which will be affected by the Pegasus Wind Project and which are constitutionally protected." Compl. ¶ 79. These allegations fall well short of their pleading burden. Accordingly, Plaintiffs due process claims will be dismissed.

### III.

Accordingly, it is **ORDERED** that Plaintiffs' motion for leave to amend, ECF No. 15, is **DENIED**.

It is further **ORDERED** that Intervenor Pegasus Wind LLC's motion to dismiss, ECF

No. 17, is **GRANTED**.

It is further **ORDERED** that the amended complaint, ECF No. 5, is **DISMISSED** with

prejudice.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: September 27, 2018

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on September 27, 2018.

s/Kelly Winslow
KELLY WINSLOW, Case Manager