UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GARRETT TETIL, et al.

    Plaintiffs,                                                               Case No. 18-cv-10808

v.                                                                          Honorable Thomas L. Ludington
                                                                              Magistrate Judge Patricia T. Morris
JUNIATA TOWNSHIP
PLANNING COMMISSION, et al.

    Defendants.
and

PEGASUS WIND, LLC

    Intervenor Defendant.
_____/

## ORDER GRANTING IN PART THE MOTION FOR RELIEF FROM JUDGMENT, DIRECTING PLAINTIFF TETIL TO FILE HIS THIRD AMENDED COMPLAINT AND DIRECTING THE CLERK TO REOPEN THE CASE

On March 12, 2018, Plaintiff Garret Tetil filed a complaint against Defendants Juniata Township (the "Township"), Juniata Township Planning Commission (the "Planning Commission"), and Juniata Township Zoning Board of Appeals (the "ZBA") (collectively, "Defendants") challenging the Planning Commission's decision to grant a special land use permit (SLUP) to the Pegasus Wind Project. ECF No. 1. On April 9, 2018, Plaintiff Garrett Tetil filed an amended complaint as of right, but also adding Plaintiffs Laura Richmond, Ryan and Amanda Wenzlick, and Jerry and Rachelle TerBush. ECF No. 5. On May 14, 2018, a stipulated order was entered allowing Pegasus Wind, LLC (Pegasus) to intervene. ECF No. 11. On May 29, 2018, Plaintiffs filed a motion to amend their complaint to add a claim of appeal of the Juniata Township Zoning Board of Appeals' decision. ECF No. 15. On June 12, 2018, Pegasus filed a

motion to dismiss the amended complaint. ECF No. 17. Pegasus Wind opposed the motion to amend, contending that the effort would be futile.

The proposed second amended complaint contained five counts for relief. Count I was a claim of appeal of the Planning Commission's decision to grant Pegasus Wind's SLUP application, a decision which Plaintiffs contended was procedurally improper for several reasons. Compl. ECF No. 15-1. Count II was a claim of appeal of the ZBA's decision to reject Mr. Tetil's appeal based on lack of jurisdiction. Count III alleged various violations of the Michigan Open Meetings Act. Counts IV and V alleged violations of procedural and substantive due process.

On September 27, 2018, the Court entered an order granting Pegasus's motion to dismiss, dismissing the complaint, and denying the motion to amend as futile. ECF No. 32. Judgment was entered in favor of Defendants. ECF No. 33. On October 25, 2018, Plaintiffs filed a motion to amend the judgment to allow them to file an amended complaint, and they attached the proposed third amendment complaint. ECF No. 34.

**I.**

Federal Rule of Civil Procedure 15(a)(2) provides that a party may amend its pleading with the court's leave and that "the court should freely give leave when justice so requires." Denial of a motion to amend is appropriate, however, "'where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"Prejudice" in the context of Rule 15 means more than the inconvenience of having to defend against a claim. *See Monahan v. N.Y.C. Dept. of Corr.,* 214 F.3d 275, 284 (2d Cir. 2000).

It requires something more substantial. In some situations, the closing of discovery is sufficient to warrant a finding of prejudice to the opponent. *See R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 441 (6th Cir. 2005).

An amendment would be futile if the amended complaint does not state a claim upon which relief can be granted. *Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005). A pleading fails to state a claim under Rule 12(b)(6) if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted).

When considering a motion to amend under rule 59 or 60, the familiar factors discussed above apply. *Leisure Caviar, LLC v. U.S. Fish and Wildlife Service*, 616 F.3d 612, 616 (6th Cir. 2010). However, rule 15's liberal policy in favor of amendment no longer applies after judgment has been entered, and a plaintiff seeking leave to amend under rule 59 or 60 must "shoulder a heavier burden." *Id*. The fact that the request is made post judgment makes it more likely that courts will find that prejudice and undue delay justifies denying relief. *Michigan Flyer LLC v.*

*Wayne County Airport Authority*, 860 F.3d 425, 431-32, 97 Fed. R. Serv. 3d 1519 (6th Cir. 2017).

## II.

Plaintiffs argue that the deficiencies in their complaint "are eminently correctable," and have been corrected." Mot. at 9, ECF No. 34. Plaintiffs offer a total of 2-pages worth of analysis to explain how the new complaint cures the deficiencies.

### A.

Counts I and II of the second amended complaint (Mr. Tetil's claims of appeal of the Planning Commission's decision and the ZBA decision) were dismissed because Mr. Tetil had not pled facts demonstrating that he was an aggrieved party. In his briefing on the motion to dismiss, Plaintiffs contended that Mr. Tetil had alleged "specific injury to his own property rights." Resp. at 11, ECF No. 24. In support of that contention, Plaintiffs cited to paragraph 33 of the second amended complaint which reads as follows:

> 33. The Planning Commission voted to approve the Pegasus Wind SLUP notwithstanding that the evidence from the record of the hearings before the Planning Commission clearly shows that the Pegasus Wind Project fails to meet the standards of the Wind Ordinance in the following significant respects: a) Wind Ordinance Section 2.6 provides that the Planning Commission may approve an increased height for a commercial wind energy tower, not to exceed 500 feet, if all of the conditions set forth in 2.6(a) – (c) are met. These conditions require a showing that the increased height will result in preserving a substantial stand of trees, existing land forms or other structures that would otherwise need to be removed to increase wind velocity; that the increased height is the minimum necessary to achieve a reasonable rate of return on the operation of the wind turbine; and that the increased height will not result in increased intensity of lighting on the tower. The Planning Commission improperly granted an increased maximum height allowance for all of the turbines and parcels involved in the Pegasus Wind System, but failed to find that any of the specific conditions set forth in Wind Ordinance Section 2.6a-c have been met for any of the proposed turbine sites. b) Wind Ordinance Section 2.19 governs shadow flicker, and states that a commercial wind energy system shall be designed such that "shadow flicker will not fall on, or in, any existing dwelling." Wind Ordinance Section 2.19(d). Nonetheless, the Planning Commission erroneously interpreted the provisions of

Section 2.19(d) to provide that shadow flicker of 30 hours per year or less is acceptable on or in an existing dwelling, contrary to the plain language of the Wind Ordinance. c) Wind Ordinance Section 2.8 sets forth maximum noise level requirements for a proposed commercial wind system. The evidence in the record demonstrates that the Pegasus Wind Project fails to satisfy the maximum noise level requirements of Wind Ordinance Section 2.8. d) The Planning Commission further determined that the Pegasus Wind Project SLUP application meets all of the setback requirements of Wind Ordinance Section 2.5 without any evidence that those requirements are met in the record of the application for the public hearings; e) There is no evidence in the record to show that the SLUP application meets the maximum vibration standard set forth in Wind Ordinance Section 2.9; f) There is no evidence in the record to show that the Pegasus Wind Project SLUP application meets the non-interference with residential reception requirements of Wind Ordinance Section 2.11.

Am. Comp, ¶¶33(a) – (f), ECF No. 5, Pg ID 25-26. As the Court previously noted, paragraph 33 simply outlined the manner in which Plaintiffs believed that the Pegaus Wind Project is deficient. Neither paragraph 33, nor any other paragraph of the complaint, contained allegations explaining how those deficiencies affected Mr. Tetil's property. Now, Plaintiffs have added paragraph 37, which sets forth specifically how the turbine will affect his property:

> 37. Garrett Tetil and his family will be directly harmed by the Planning Commission's erroneous decision to grant the SLUP for the Pegasus Wind Project in the following ways: a) The increased height of the turbines will particularly impact Mr. Tetil and his family, because they live in such close proximity to the turbine. The increased height will increase the turbine's profile and particularly block their views and access to sunlight in ways that are different and substantially greater than the public at large or the Township as a whole. The Township has approved a massively tall structure to be constructed virtually next door to his property, without making any of the necessary findings required to approve such a tall structure. b) Mr. Tetil will be directly subject to and affected by shadow flicker from the proposed turbine. Despite the fact that the Township's Wind ordinance clearly provides that shadow flicker will not fall on, or in, any existing dwelling, Pegasus Wind's own studies indicate that Mr. Tetil's dwelling will receive some shadow flicker (up to 30 hours per year). This shadow flicker will cause annoyance, harm and disturbance to Mr. Tetil and shall interfere with the peaceful enjoyment of his home. There is no dispute that he will experience some shadow flicker as a result of the currently proposed turbine, despite the Wind Ordinance requirement that there be none. c) The Planning Commission's erroneous decision to approve the SLUP without sufficient evidence of compliance with noise, setback and vibration standards will also cause harm to Mr. Tetil. A main problem with the proximity of turbines relates to the safety of

the Tetil children (ages 11, 9, and 7) as they work with their horses. Mr. Tetil has a made a large financial investment into equestrian endeavors. The location of his outdoor riding arena, despite being close to his home, will undoubtedly receive shadow flicker and noise. Horses are prey animals that operate on the fight or flight response, meaning that changes in the environment can result in them "fleeing," which could have catastrophic implications. While show horses are highly trained and can adjust to new environments over time, there is no way to train a horse to adapt to a change in environment that is not consistent and unpredictable, such as noise, vibrations and shadow flicker caused by turbines. This will mean that Mr. Tetil will be unable to allow his children to work with their horses during times of shadow flicker, or high wind in which the turbine noise level is elevated. This shortened practice time will undoubtedly affect their performance. In order to rectify this situation, Mr. Tetil would be forced to build an indoor arena (at an estimated cost of $65,000) or not keep horses at his home, resulting in significant additional expense to him in boarding costs and travel time. d) Because Mr. Tetil's home is a mere 3,000 feet from a proposed turbine site, if the turbine creates interference with residential radio, TV or other electromagnetic reception, he will experience such effects in a far greater magnitude and with far greater regularity than other members of the general public or the Township at large. Mr. Tetil operates Tetil Engineering, 12 LLC out of his home. His work focuses on custom electronic controls and software and relies heavily on high speed internet. There is only one option for high speed internet in the area, and it is a wireless solution. Due to his close proximity to the Vassar State Game Area, there is only one internet tower that he can access. The closest proposed turbine to him will be in between his antenna and this lone internet tower. There is a high probability that Mr. Tetil's high-speed internet service will be disrupted, which shall cause economic harm and damage to his home business.

Prop. 3rd Am. Compl. ¶ 37, ECF No. 34-1.

In stark contrast to the previous complaint, which did not contain a single such allegation, paragraph 37 sets forth detailed and extensive allegations explaining every possible harm Mr. Tetil, his children, and his horses might experience because of the turbines. But there is no compelling explanation about why this information never found its way into any of his previous three complaints. "A court acts within its discretion in denying a Rule 15 and a Rule 59 motion on account of undue delay—including delay resulting from a failure to incorporate previously []available evidence" though the court should "pay particular attention to the movant's

explanation for failing to seek leave to amend prior to the entry of judgment." *Leisure Caviar,* 616 F.3d at 616 (citations and quotations omitted).

The only explanation Plaintiffs provide for why they did not seek leave sooner is because "of a sincerely held, but ultimately incorrect, belief that their First and Second Amended Complaints adequately set forth the factual bases supporting their claims." Mot. at 10. This is simply not a credible explanation with respect to Counts I and II for the reasons explained above. The allegations were plainly insufficient to support those counts. Moreover, even if Plaintiffs did sincerely hold that belief, they have provided no explanation for why this additional factual detail concerning the interference with Mr. Tetil's property was not available to them earlier. Accordingly, the motion will be denied as to Counts I and II.

**B.**

Count III of the second amended complaint alleged various violations of the Michigan Open Meetings Act (OMA), MCL §15.262(a). ECF No. 5 at 13. Count III alleged 1) that the published notice and individual notices were deficient in several respects; 2) that the December 9, 2017 hearing was not held in a place generally accessible to the public; 3) that during the course of the December 9, 2017, hearing the members of the Planning Commission huddled together and conducted an off the record deliberation; 4) that the members of the Planning Commission refused to permit public comment at the January 3, 4, and 13 special meeting; 5) that the Planning Commission refused to reasonably allow Mr. Tetil to tape record or videotape some or all of the proceedings of the January 3, 4, and 13 meetings; and 6) that the ZBA discussed or deliberated the Township attorney's opinion regarding ZBA jurisdiction outside of the context of an open meeting.

In dismissing Count III, the Court addressed the deficiency in each of these individual allegations.

**i.**

As for the December 9 meeting, the Court explained as follows:

> With respect to any alleged OMA violations arising out of the December 9, 201[7] meeting, including the improper notice thereof, the inadequacy of the venue chosen, or Commission members' off-the-record side-bar conversation, Plaintiffs do not seek any of the relief provided for by the OMA. In fact, the complaint does not appear to seek any relief at all with respect to those alleged violations . . . the SLUP application was not approved at the December 9 meeting. In fact, the Planning Commission took no action at the December 9, 201[7] meeting. Plaintiffs do not allege that the January meetings were a continuation of the December 9 meeting. Thus, there is no decision to invalidate arising out of the December 9 meeting. Nor is there a request to enjoin any of the violations arising out of that meeting, the improper notice thereof, or the inadequacy of the venue. Moreover, Plaintiffs do not seek any damages in conjunction with those alleged violations. To the extent the complaint can reasonably be read to ask the Court to simply declare that Defendants committed those violations, the OMA does not provide for purely declaratory relief. *Citizens For A Better Algonac Cmty. Sch. v. Algonac Cmty. Sch.*, 317 Mich. App. 171, 184, 894 N.W.2d 645, 651 (2016), appeal denied, 500 Mich. 1009, 896 N.W.2d 1 (2017). Accordingly, the allegations relating to the December 9, 2018 meeting will not be addressed further.

Order at 12-13.

Plaintiffs' proposed third amended complaint continues to allege OMA violations arising out of the December 9 meeting, but Plaintiffs offer no explanation as to how the above deficiencies have been cured. Accordingly, the motion to amend will be denied as to these claims.

**ii.**

Plaintiffs previously alleged that the notice of the January meetings was "defective" in the following respects: 1) the notice failed to sufficiently indicate the property that was subject to the SLUP request; 2) the notice did not describe the project for which a SLUP was requested but

simply stated "Pegasus Wind Project;" 3) the notice did not adequately or reasonably notify members of the public which parcels may be involved, but merely recited parcel numbers; 4) the individualized notices to persons within 300 feet of the parcels subject to the SLUP application did not inform them that a proposed wind turbine would be in proximity to their houses.

The Court dismissed these claims, noting that "the OMA (MCL 15.264) only requires notices of public meetings to contain 'the name of the pubic body to which the notice applies, its telephone number if one exists, and its address.'" Order at 14. Plaintiffs had not alleged that these requirements were violated. The Court rejected Plaintiffs argument that ZEA violations are actionable under the OMA.

In their proposed third amended complaint, Plaintiffs continue to allege that the notice of the January meetings was deficient. Plaintiffs only explanation for why these allegations remain viable notwithstanding the Court's previous order is as follows: "Plaintiffs assert, based on a good faith argument for extension of prior case law in Michigan, that the failure to follow the ZEA's notice requirements should result in invalidation of the planning Commission's approval of the SLUP." Mot. at 11-12.

In support of this assertion, Plaintiffs cite to *Forest Hill Energy – Fowler Farms, L.L.C. v. Township of Bengal*, Docket #319134 (Mich. Ct. App. 12/4/2014), which they attach to their motion. Considering Plaintiffs offer no accompanying explanation as to how *Forest Hill* applies here, one would expect *Forest Hill* to be directly on point, obviating the need for explanation. Not so. In fact, the opposite is true. *Forest Hill* does not discuss the ZEA's notice requirements at all. The word "notice" appears nowhere in the opinion. The allegations regarding the notice of the January meetings remain insufficient to state a claim for relief. Accordingly, the motion to amend will be denied as to these claims.

**iii.**

Plaintiffs previously alleged that "[a]t the special meeting *held over the course of January 3, 4 and 13, 2018*, the Planning Commission refused to allow public comment, and refused to allow members of the public to be heard or to speak regarding the Pegasus Wind Project SLUP." Compl. ¶ 32 (emphasis added). The Court dismissed this claim, noting that it was directly contradicted by the meeting minutes attached to Plaintiffs' state court complaint (and Defendants' motion to dismiss), which established that public comment was permitted on January 3 meeting.[1] Order at 14-15.

Plaintiffs now contend that the proposed third amended complaint makes it clear that the meeting was in fact three different meetings, as opposed to one meeting held over the course of three days. Plaintiffs already explained this in their response to the motion to dismiss. The Court rejected this explanation because it contradicted the allegations in Plaintiffs' complaint. The complaint described one "special meeting held over the course of January 3, 4, and 13," as opposed to three distinct meetings. This contradiction remains unexplained and undermines Plaintiffs' good faith basis for seeking an amendment. Moreover, as the Court previously explained, Plaintiffs have cited no authority for the notion that the OMA requires public comment on each day of a three-day meeting. Order at 15. The relevant precedent tends to undermine this notion. *See, e.g. Treul v. Otsego Cty. Zoning Bd. of Appeals*, No. 231686, 2002 WL 31082159, at *2 (Mich. Ct. App. Sept. 17, 2002) (". . . the ordinance could have imposed reasonable limits on the amount of public commentary . . . or restricted public comment to certain times within meetings"). The allegations concerning public comment remain insufficient to state a claim for relief. Accordingly, the motion to amend will be denied as to these claims.

---

[1] Plaintiffs also admitted in their response brief that public comment was allowed on January 3 and 4.

**iv.**

Plaintiffs previously alleged that "[t]he Planning Commission refused to reasonably allow Plaintiff Garrett Tetil to tape record or videotape some or all of the proceedings of the January 3, 4 and 13 public hearing/special meeting, in violation of the Open Meetings Act." Compl. ¶ 62. The Court dismissed this claim because Plaintiffs' allegations were inconsistent:

> Plaintiffs allege that "Mr. Tetil was required to keep his microphone and video cameras in a specific corner located in the back of the room. From the location in which his video camera was restricted, it was not possible to obtain a video recording of the entire meeting." *Id.* ¶ 30. Oddly, the very next paragraph alleges as follows: "[s]imilarly, because the audio recording microphone was not permitted to be closer than 10 feet from the members of the Planning Commission, it was not possible to obtain an intelligible audio recording of the public hearing, either." *Id.* ¶ 30, 31. Plaintiffs first allege that the microphone had to be kept in a specific corner in the back of the room. Then they state that it could be no closer than 10 feet from the members of the planning commission. These statements are inconsistent, unless the room was so small that the distance between the planning commission members and the back of the room was only 10 feet. Based on these allegations, it is unclear what restrictions the Commission actually imposed on attendees' right to use recording equipment. Moreover, Plaintiffs make no attempt to explain how the restrictions imposed by the commission (whatever they were) were unreasonable. Accordingly, the allegations concerning the restrictions on recording fail to state a claim under the OMA.

Order at 16. Paragraph 67 of the proposed third amended complaint now explains that the video and audio equipment are separate pieces of equipment. The video recorder had to stay in the back of the room, and the audio equipment no closer than 10 feet from the commissioners. Plaintiffs explain that the the room was a large high school cafeteria and the proceedings were not fully visible from the back of the cafeteria.

Although it is late in the proceedings, the confusion that arose was because of unartful pleading as opposed to bad faith conduct or intentional omission of details. Moreover, the basis the Court relied upon for dismissing this claim (the inconsistency in the complaint) was not

offered by the Defendants; rather, it was offered by the Court *sua sponte*. Thus, Plaintiffs were not put on notice of this inconsistency in time to address it in their response to the motion to dismiss. They were first put on notice of the inconsistency when the Court entered its order dismissing the complaint.

As for the bases for dismissal the Defendants did offer, these will be addressed now. Pursuant to MCL 15.263(1), "[t]he right of a person to attend a meeting of a public body includes the right to tape-record, to videotape, to broadcast live on radio, and to telecast live on television the proceedings of a public body at a public meeting. The exercise of this right shall not be dependent upon the prior approval of the public body. *However, a public body may establish reasonable rules and regulations in order to minimize the possibility of disrupting the meeting*." (emphasis added). In their motion to dismiss, Defendants contended that their restrictions were reasonable:

> Specifically, video cameras were required to be placed in the back of the room so they did not block anyone's view, and audio equipment was required to be ten feet away so each person had the same opportunity to record the proceeding. (*See id.* ¶¶ 30-31.) These restrictions were reasonable to ensure that all participants had equal access to the proceedings.

Mot. at 18, ECF No. 17.

As Plaintiffs pointed out, however, these contentions are non-cognizable at the motion to dismiss stage. Plaintiffs allegations are presumed true. Defendants cannot obtain dismissal by denying the allegations and explaining why their restrictions were reasonable. The evidence produced in this case will determine whether the restrictions were reasonable. For now, Mr. Tetil's allegations are sufficient to establish that the OMA was violated where the restrictions on his audio and video equipment rendered it impossible to obtain an intelligible recording of the proceedings. Moreover, there is no evidence of undue delay or bad faith with respect to these

allegations. The deficiency in the complaint was a subtle one which was not even caught by the Defendants. Plaintiffs new allegations have clarified their assertions. Accordingly, the amendment will be permitted as to this claim.

**v.**

Plaintiffs previously alleged that during Mr. Tetil's March 7 appeal hearing before the ZBA, "it was clear that the members of the ZBA were familiar with and had previously discussed an opinion of the township attorney regarding the ZBA's jurisdiction. This previous discussion did not take place in an open meeting of the ZBA, nor did the ZBA go into closed session to discuss this opinion, as provided by the Michigan Open Meetings Act, indicating that yet another unlawful closed session had occurred." Compl. ¶ 42.

The Court rejected this claim, explaining as follows:

> . . . [I]t is far from unreasonable to require Mr. Tetil to provide some modicum of factual information regarding what occurred at the hearing and what statements were made that suggested a closed session had previously taken place. Simply alleging that it "was clear" to him that a closed session took place falls short of his pleading burden and fails to apprise the Defendants of the basis for his allegation against them.

Order at 17. Plaintiffs now add the following detail: "There was no prior discussion of jurisdiction on the record by the members of the ZBA, yet all of the ZBA members appeared to be well-versed on the subject and had reached a consensus to reject Mr. Tetil's appeal in some previous discussion prior to the March 7 hearing." Prop. 3rd Am. Compl. ¶ 45. This does not set forth sufficient factual information explaining the basis for Mr. Tetil's conclusion that a previous closed meeting had taken place. The ZBA members almost certainly had previous exposure to jurisdictional issues. It would be strange indeed if Mr. Tetil's appeal was the first appeal before the ZBA that had ever raised a jurisdictional question. The fact that the ZBA members appeared well versed on the jurisdictional question does not, by itself, support the inference that they had

- 13 -

previously held a closed meeting and resolved the jurisdictional question against him. Accordingly, the motion to amend will be denied as to this claim.

**C.**

The proposed amended complaint reasserts the two counts (count V and VI) alleging violations of Plaintiffs' procedural and substantive due process rights. The Court dismissed these counts because Plaintiffs did not allege sufficient facts to establish that they had a constitutionally protected property interest burdened by the Defendants' actions in this case. Order at 18. Plaintiffs contend that this deficiency is cured because they have added allegations explaining how Mr. Tetil's property rights have been invaded. These allegations were discussed above in section II.A, rejecting Plaintiffs' amended counts I and II (claims of appeal). Proposed amended counts V and VI will be rejected for the same reason, namely that Plaintiffs have not explained why they could not have made these allegations earlier.

**III.**

Accordingly, it is **ORDERED** that the motion to alter/amend the judgment, ECF No. 34, is **GRANTED** in part and **DENIED** in part. The motion is granted solely as to Plaintiff Garrett Tetil's request to amend his complaint to allege that Defendants violated the OMA by unreasonably restricting his right to record the proceedings that took place over January 3, 4 and 13. The motion is denied as to all other plaintiffs and all other claims, which should be excluded from the amended complaint.[2]

It is further **ORDERED** that Plaintiff Garrett Tetil is **DIRECTED** to file his third amended complaint by **December 28, 2018**.

---

[2] If Plaintiff Tetil does not heed this admonition and continues to attempt to shoehorn in other unrelated claims or allegations, he faces dismissal and sanctions under Rule 11.

It is further **ORDERED** that the judgment is **VACATED IN PART** as set forth above and the Clerk is directed to reopen the case.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: December 11, 2018